# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

RICKEY ROGERS                                    :
                                                 :
      Plaintiff                               :       CIVIL ACTION
                                                 :       NO. 3:19-CV-30103-KAR
v.                                               :
                                                 :
STATE AUTOMOBILE CORPORATION                     :
D/B/A STATE AUTO INSURANCE COMPANIES             :
                                                 :
      Defendant                               :       OCTOBER 22, 2019

## DEFENDANT'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION TO DISMISS

Defendant, Patrons Mutual Insurance Company of Connecticut ("Patrons" or "Defendant"), incorrectly named as State Automobile Corporation d/b/a State Auto Insurance Companies, files this Memorandum of Law in Support of its Motion to Dismiss Plaintiff's Complaint. Plaintiff's Complaint should be dismissed for three reasons.

First, the named defendant, "State Automobile Corporation d/b/a State Auto Insurance Companies" did not issue the subject insurance policy to Plaintiff, and Plaintiff has named that entity in error. Patrons is an insurance company affiliated with State Automobile Mutual Insurance Company (not the "State Auto" entity that Plaintiff has named), and it is Patrons that issued the relevant policy. The named defendant is not affiliated with Patrons, State Automobile Mutual Insurance Company, or any other company affiliated with State Automobile Mutual Insurance Company. Patrons has previously advised Plaintiff of that mistaken identification. Nonetheless, Plaintiff failed to amend his Complaint to name the correct party (Patrons). Therefore, the complaint should be dismissed in its entirety.

Second, even if Plaintiff cured the mistaken identity of the defendant, he has brought impermissible direct-action liability claims against the insurer, rather than asserting liability

claims against the alleged tortfeasor.  Massachusetts is not one of the few states (like Wisconsin) that allows a direct-action claim against an insurer.  Instead, Plaintiff must pursue negligence claims against the tortfeasor *before* any liabilities attach to the tortfeasor's insurer.  Accordingly, Counts I and II must be dismissed.

Third, Count III of Plaintiff's complaint is fatally flawed because it is derivative of the impermissible direct-action claims that Plaintiff casts in Counts I and II and otherwise fails to state a claim upon which any relief can be granted.  Count III specifically asserts that defendant insurer (albeit incorrectly named) violated Massachusetts law essentially by not paying a disputed claim.  However, as evidenced by Plaintiff's mistaken filings, he has never pursued the correct insurance entity (despite being advised of his mistake), has never properly pursued a claim against the alleged tortfeasor responsible for his alleged damages, and otherwise bases the allegations in Count III solely on bald accusations of "deceptive" and "unfair" practices, without more.    Accordingly, Count III must be dismissed.

## I.      BACKGROUND

### A.      Plaintiff has named an Incorrect Insurance Company as Defendant

On July 30, 2019, Plaintiff filed his three-count "Complaint for Personal Injuries."   In doing so, Plaintiff named only one defendant: State Automobile Corporation d/b/a State Auto Insurance Companies.

On October 2, 2019 and again on October 11, 2019, undersigned counsel wrote to Plaintiff advising him that he named the incorrect insurance company.  *See* Exhibit A at ¶ 8. Specifically, counsel noted that Patrons (not State Automobile Corporation d/b/a State Auto Insurance Companies) issued Policy No. BAP 2451418 to Hurley & David Inc. (the owner of the subject vehicle), for the policy period of December 13, 2018 to December 31, 2019.  *See* Exhibit A at ¶ 6.  Despite these letters, Plaintiff failed to amend his Complaint to name the correct party.

**B.      Plaintiff's Direct-Action Negligence Claims Against the Insurer (Counts I and II)**

Plaintiff's Complaint alleges that, on March 4, 2018,  he was sitting in his parked vehicle when Ferrera Cesar drove a vehicle "maintained or controlled by Hurley" into the rear of Plaintiff's vehicle.  Doc. 1 at ¶¶ 2, 8.[1]  Plaintiff alleges the driver's (Cesar's) negligence caused the collision resulting in personal injuries to the Plaintiff. Doc. 1 at ¶ 12.  Plaintiff did not file suit against the driver (Cesar) or the driver's employer (Hurley).  Instead, Plaintiff filed a direct-action against State Automobile Corporation d/b/a State Auto Insurance Companies asserting negligence at Count I and negligent infliction of emotional distress at Count II.

**C.      Plaintiff's "MGL Chapter 93A/176D" Claims (Count III)**

At Count III, Plaintiff alleges unfair settlement practices and bad faith pursuant to Massachusetts Consumer Protection Act M.G.L. c. 93A, and Unfair and Deceptive Acts and Practices in the Business of Insurance M.G.L. c. 176D for failure "to settle or even negotiate with plaintiff regarding his personal injuries" and refusal "to tender any reasonable settlement offer."  Doc. 1 at ¶¶ 20. 39.  Plaintiff's Count III specifically incorporates and references the allegations the direct-action negligence claims against Defendant.  Doc. 1 at ¶ 34.

**II.     LEGAL STANDARD**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may file a pre-answer motion to dismiss claims in the plaintiff's complaint for failure to state a claim upon which relief can be granted. *See* F.R.C.P. 12(b)(6). "To survive a motion to dismiss, a complaint

---

[1]      Patrons understands the subject motor vehicle accident actually occurred on or about February 19, 2019, the driver's name is Julio Cesar Ferreira, and the named insured under the Patrons policy is Hurley & David, Inc. However, for purposes of this Motion to Dismiss, Patrons takes all factual allegations in Plaintiff's Complaint as true.

must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although a court must consider non-conclusory, factual allegations as true for purposes of the Motion, a court must also identify and disregard allegations which are merely legal conclusions or "[t]hreadbare recitals of the elements of a cause of action." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011).

Under Rule 12(b)(6), a court generally is limited to considering the allegations of the Complaint. However, the First Circuit has "recognized an exception to this rule 'for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint,' which courts may properly consider on 12(b)(6) motions." *Rivera v. Centro Medico de Turabo, Inc.*, 575 F.3d 10, 15 (1st Cir. 2009) quoting *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir.2001)*;see also Penney v. Deutsche Bank Nat'l Tr. Co.*, No. 16-CV-10482-ADB, 2017 WL 1015002, at *3 (D. Mass. Mar. 15, 2017)[2] ("When, as now, a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)").

## III.  ARGUMENT

### A.  Plaintiff's Entire Complaint Should Be Dismissed Because State Automobile Corporation d/b/a State Auto Insurance Companies is Not the Correct Defendant.

Plaintiff's entire Complaint should be dismissed because the named Defendant is not the proper Defendant in this case. *See Curran v. City of Boston,* 777 F. Supp. 116, 118 (D. Mass. 1991) (agreeing to dismiss entities who were improperly named as defendants); *see also Lifchits*

---

[2]        Unpublished Cases are attached hereto as Ex. B.

*v. Progressive Corp.*, 2018 Mass. App. Div. 207 (Dist. Ct. 2018) (noting that plaintiff incorrectly sued proper defendant United Financial Casualty Company as Progressive).

As an exception to Rule 12(b)(6), this Court should consider the Affidavit of Josh Meredith setting forth the proper insurance company from which Plaintiff seeks recovery in his Complaint.  That Affidavit provides that Patrons, not State Automobile Corporation d/b/a State Auto Insurance Companies, issued a policy of insurance to Hurley & David, Inc., whose vehicle was allegedly involved in the subject motor vehicle accident with Plaintiff.  Ex. A at ¶¶ 4-6.  Additionally, Patrons is handling claims arising out of said accident.  *Id.* at ¶ 7.  Moreover, Patrons twice wrote to Plaintiff requesting that he amend the Complaint to name Patrons but Plaintiff failed to do so.  *Id.* at ¶ 8.

For this reason, Plaintiff's Complaint, which is lodged solely against State Automobile Corporation d/b/a State Auto Insurance Companies, which is not an entity affiliated with Patrons or State Automobile Mutual Insurance Company, should be dismissed in its entirety for failure to state a claim upon which relief may be granted as against this improperly-named party.

**B.      Negligence Counts I and II Should Be Dismissed Because Plaintiff's Claims are Impermissible Direct-Action Claims.**

Even if Plaintiff had properly filed this Complaint against Patrons, Plaintiff's negligence and negligent infliction of emotional distress claims at Counts I and II must be dismissed as insufficient as a matter of law. "It is established law in Massachusetts that an injured party may not maintain a cause of action against a liability insurer for the actions of its insured." *Lifchits v. Progressive Corp.*, 2018 Mass. App. Div. 207 (Dist. Ct. 2018) (citing *Tessier v. State Farm Mut. Ins. Co.*, 334 F. Supp. 807, 809 (1971), *aff'd* 458 F.2d 1299, 1300 (1st Cir. 1972) (recognizing Massachusetts is not a "direct action" state, and affirming district court's dismissal of negligence claims against alleged tortfeasor's insurer)).  "An injured party's right to proceed against the

insurer is a two-step process.  First, a judgment must be obtained against the insured.  Then, if the judgment is not satisfied, the insurer may be pursued by a bill to reach and apply." *Id.*

In Counts I and II, Plaintiff alleges negligence and negligent infliction of emotional distress claims against Defendant as the alleged insurer of "Hurley."  Such allegations are not based upon any negligent act of Patrons itself, but based upon the alleged negligence of Patrons' insured Hurley & David, Inc. and the driver (Cesar).  Moreover, Plaintiff has not followed the prescribed "two-step process" under Massachusetts law, the first step of which is for Plaintiff to obtain a judgment against the insured.  Because Massachusetts law does not recognize such a claim against a liability insurer for the alleged actions of its insured, Plaintiff's negligence claims at Counts I and II are insufficient as a matter of law and must be dismissed.

**C.    Count III Should Be Dismissed Because Such Count is Lodged Against a Misidentified Insurance Company, Derivative of Plaintiff's Impermissible Direct-Action Claims, and Based upon the Faulty Belief that Insurer Cannot Challenge the Liability of its Insured.**

Plaintiff has brought the instant complaint against a party who did not issue any insurance policies under a direct-action theory of recovery that does not exist under Massachusetts law. Plaintiff then doubles down at Count III of his Complaint by asserting that the misidentified insurance company violated Massachusetts Consumer Protection Act M.G.L. c. 93A[3], and Unfair and Deceptive Acts and Practices in the Business of Insurance M.G.L. c. 176D.

As an initial matter and as addressed in §§ A and B above, Count III should be dismissed because it directs bad faith consumer fraud claims against an incorrect party: State Automobile Corporation d/b/a State Auto Insurance Companies, not properly against Patrons.  Furthermore,

---

[3]    Chapter 176D provides no private remedy for individuals and Plaintiff's claims should be dismissed on that basis.  *See Travelers Ins. Co. v. Waltham Indus. Laboratories Corp.*, 722 F. Supp. 814, 831 (D. Mass 1988), *aff'd in part, rev'd in part*, 883 F.2d 1092 (1st Cir. 1989) ("'[w]hile Chapter 176D, § 3 has found application through the more general provisions of Chapter 93A, it provides no private right of action.'").

dismissal is warranted because the claims at Count III specifically incorporate (and indeed, are derivative of) the impermissible direct-action claims articulated in Counts I and II.  *See* Doc. 1 at ¶ 34; *Pembroke Country Club, Inc. v. Regency Savings Bank, F.S.B.,* 62 Mass. App.Ct. 34, 40 (Mass. App. 2004) (dismissing Chapter 93A consumer fraud claim as "wholly derivative" of the [insufficient] tortious interference claim); *Pimental v. Wachovia Mortg. Corp.,* 411 F. Supp.2d 32, 40 (2006) (holding that since plaintiff failed to allege sustainable breach of contract and negligence claims, there is no basis to find defendant liable under the Chapter 93A claim, which is based upon unsustainable claims).

Equally problematic, Plaintiff's Count III seems to hinge upon Plaintiff's belief that an insurance company must pay claims and must not challenge or test the liability of its insured. Here, Plaintiff has not even alleged or proven that the liability of Patrons' insured is certain or unchallengeable.   Rather, Plaintiff summarily concludes that Defendant acted in bad faith for failing to settle, without more.  Doc. 1 at ¶¶ 20, 39.  Of course, Patrons has the right to defend its insured in a lawsuit, and Patrons would do so in a lawsuit where Plaintiff correctly and appropriately brings a negligence claim against the insured.   That has not happened here. Instead, Plaintiff complains that, because Patrons did not settle with him, Patrons necessarily acted in "bad faith."   It cannot be "bad faith" or a consumer fraud violation for an insurer to stand by and protect the rights of its insured.  *See Clegg v. Butler,* 424 Mass. 413, 421 (Mass. 1997) ("Our decisions interpreting the obligations contained within G.L. c. 176D, § 3(9), in no way penalize insurers who delay in good faith when liability is not clear and requires further investigation.")

Plaintiff has failed to meet the necessary factual and procedural requisites for bringing a claim sounding in consumer fraud or bad faith against an insurance company.  First, Plaintiff

does not even bother to name the proper Defendant.  Second, Plaintiff alleges negligence against an improper insurance company Defendant in a state that does not permit direct-actions against insurance companies.  Third, Plaintiff's bad faith claim is based upon mere disagreement or displeasure with the tortfeasor's insurance company, which cannot equate to a statutory violation.  For these three reasons, this Court must dismiss Count III of Plaintiff's Complaint.

Even if Plaintiff had properly stated a claim for consumer fraud violations (and he has not), courts typically stay those claims pending the outcome of the underlying litigation. *See Vasquez v. Elco Administrative Services,* No. CIV. A. 01-3029L, 2001 WL 1631535, at *2 (Mass. Super. 2001) (staying discovery relating solely to consumer protection claims until underlying negligence claim has been decided).  Therefore, to the extent this Court does not dismiss Count III, it should stay this consumer fraud claim pending the outcome of the underlying litigation.

## IV.   CONCLUSION

Plaintiff has failed to state legally cognizable claims in Counts I, II and III of his Complaint because State Automobile Corporation d/b/a State Auto Insurance Companies is not the correct Defendant in this case. Therefore, Plaintiff's entire Complaint should be dismissed. Even assuming Plaintiff had properly filed suit against Patrons, Plaintiff's Complaint is still subject to dismissal because a claimant may not directly proceed against an insurer for the torts of its insured under Massachusetts law, and Plaintiff's bad faith claim is derivative of an impermissible direct-action claim.  For the foregoing reasons, Defendant Patrons Mutual Insurance Company of Connecticut, incorrectly named as State Automobile Corporation d/b/a State Auto Insurance Companies, respectfully requests that this Court grant its Motion to Dismiss.

DEFENDANT,
PATRONS MUTUAL INSURANCE COMPANY OF
CONNECTICUT INCORRECTLY NAMED
STATE AUTOMOBILE CORPORATION
D/B/A STATE AUTO INSURANCE COMPANIES,

/s/ Deborah Etlinger (565222)
Deborah Etlinger (565222)
Wolf, Horowitz & Etlinger, LLC
750 Main Street, Suite 606
Hartford, CT 06103
(860) 724-6667
detlinger@wolfhorowitz.com

## **CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing has been sent, via U.S. Mail, postage pre-paid, to the following party on October 22, 2019.

Rickey Rogers
47 Gatewood Road
Springfield, MA 01119
Pro Se Plaintiff

/s/ Deborah Etlinger (565222)
Deborah Etlinger

190672

# EXHIBIT A

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| RICKEY ROGERS | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | NO. 3:19-CV-30103-KAR |
| v. | : | |
| | : | |
| STATE AUTOMOBILE CORPORATION | : | |
| D/B/A STATE AUTO INSURANCE COMPANIES | : | |
| | : | |
| Defendant | : | OCTOBER 18, 2019 |

## **AFFIDAVIT**

Josh Meredith, having been duly sworn, deposes and states as follows:

1.    I have first-hand knowledge of the facts set out below, I am over the age of 18 years and I understand and believe in the obligations of an oath.

2.    I hold the position of CARE Associate Senior for State Auto Property & Casualty Insurance Company, the employees of which provide services to the other companies within the State Auto Group of companies.  In my role as CARE Associate Senior, I provide services on behalf of several companies, which are affiliated with State Auto Property & Casualty Insurance Company, including Patrons Mutual Insurance Company of Connecticut ("Patrons").

3.    I have reviewed Plaintiff's Complaint, which asserts claims against "State Automobile Corporation d/b/a State Auto Insurance Companies."

4.    There are a total of 11 insurance companies within the State Auto Group, none of which are named "State Automobile Corporation."

5.    We have no record of any of the 11 State Auto Group insurance companies issuing a policy to Hurley & David, Inc., other than Patrons.

6.      Patrons issued an insurance policy to Hurley & David, Inc. for the period of December 31, 2018 to December 31, 2019 under policy no. BAP 2451418, as well as for the prior period of December 31, 2017 to December 31, 2018 under the same policy number.

7.      I am handling claims on behalf of Patrons arising from the alleged auto accident, which is the subject of Plaintiff's Complaint.

8.      It is my understanding that counsel for Patrons twice wrote to Plaintiff – on October 2, 2019 and October 11, 2019 – requesting that Plaintiff amend his Complaint to name the proper party, Patrons, but Plaintiff has not done so.

9.      In my capacity as CARE Associate Senior, I submit this affidavit in support of the Motion to Dismiss filed by Patrons Mutual Insurance Company of Connecticut, incorrectly named as State Automobile Corporation d/b/a State Auto Insurance Companies.


_____
Josh Meredith
CARE Associate Senior



STATE OF _____Iowa_____        )
                                )    ss. _____
COUNTY OF ____Polk____         )

Subscribed and sworn to before me this ___ day of ___October___, 2019.


_____
Notary Public


189373

2

# EXHIBIT B

Penney v. Deutsche Bank National Trust Company, Not Reported in Fed. Supp. (2017)

2017 WL 1015002

2017 WL 1015002
Only the Westlaw citation is currently available.
United States District Court, D. Massachusetts.

Gerard M. PENNEY, et al., Plaintiffs
v.
DEUTSCHE BANK NATIONAL TRUST
COMPANY, et al., Defendants

Civil Action No. 16-cv-10482-ADB
|
Signed 03/15/2017

**Attorneys and Law Firms**

James Heggie, Law Offices of James J. Heggie, Quincy, MA, for Plaintiffs.

Joseph A. Farside, Jr., Krystle S. Guillory Tadesse, Locke Lord LLP, Providence, RI, John S. McNicholas, Korde & Associates PC, Lowell, MA, for Defendants.

MEMORANDUM AND ORDER

ALLISON D. BURROUGHS, U.S. DISTRICT JUDGE

**\*1** Plaintiffs Gerard and Donna Penney (individually, "Gerard" and "Donna," and collectively, "Plaintiffs") filed suit against Deutsche Bank National Trust Company (the "Bank"), in its capacity as the trustee for the certificate holders of a mortgage-backed securities trust that holds the mortgage to the Plaintiffs' home located at 34 Anchor Drive, Sandwich, Massachusetts (the "Property"), and Owen Loan Servicing, LLC ("Owen"), the servicer of the loan for the Plaintiff's home (collectively, the "Defendants"). This suit arises out of the threatened foreclosure of the Property.

Now pending before this Court is the Defendants' Motion to Dismiss for failure to state a claim [ECF No. 26], the Defendants' Motion to Strike Gerard's affidavit and exhibits attached to Plaintiffs' opposition to the motion to dismiss [ECF No. 33], and the Plaintiffs' request for a preliminary injunction, made in the Amended Complaint [ECF No. 21 at ¶ 83(i) ]. For the reasons discussed below,

the Court GRANTS in part and DENIES in part the Defendants' motion to strike and Defendants' motion to dismiss, and DENIES the Plaintiffs' request for a preliminary injunction.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

The following facts are taken from Plaintiffs' Amended Complaint [ECF No. 21 (hereinafter, the "Complaint") ] and supplemented by materials incorporated into the Complaint. See Rodi v. S. New England Sch. of L., 389 F.3d 5, 12 (1st Cir. 2004). The Plaintiffs are a married couple living in Sandwich, Massachusetts. Complaint at ¶¶ 1–2. On or about April 7, 1997, Donna and Gerard received the Property as grantees by a quitclaim deed and took title as tenants by the entirety. Id. at ¶ 5. On or about August 27, 2003, a Durable Power of Attorney was recorded in the Barnstable County Registry of Deeds, appointing Gerard as Donna's attorney-in-fact. Id. at ¶ 6. On or about July 25, 2005, Gerard executed an "Adjustable Rate Note," (the "Note") with a "Balloon Note Addendum" (the "Addendum") with H&R Block Mortgage Corporation as the lender. Id. at ¶ 8. This Note was for a 30-year, $405,000 loan, which would reach maturity in August 2035. Id.; [ECF No. 27-1 at 2]. Gerard simultaneously executed a Mortgage on the Property as security for the Note.[1] Complaint at ¶ 12. It is not apparent from the pleadings why Gerard obtained this loan.

Gerard signed the Mortgage on behalf of Donna, including an annotation that the execution on her behalf was pursuant to a Power of Attorney dated March 20, 2003. Id. at ¶¶ 12–15; see also [ECF No. 27-2 at 11]. Donna did not personally sign either the Note or the Mortgage, and was not involved in the application process for the loan. Id. at ¶¶ 14, 15. Plaintiffs allege that Gerard was told he had to sign Donna's name on the Mortgage to receive the loan. Id. at ¶ 15. The Plaintiffs further allege that there was no Power of Attorney dated March 20, 2003, but state that a Durable Power of Attorney was recorded on August 27, 2003. Complaint at ¶¶ 6–7. On or about October 6, 2006, Gerard executed a "Declaration of Homestead" for the Property in his sole capacity and recorded it in the Barnstable County Registry of Deeds. Id. at ¶ 16.[2]

**\*2** In May 2011, Donna was declared disabled. Id. at ¶¶ 6, 12. That same year, Gerard faced financial difficulties and fell behind on the mortgage payments. Id. at ¶ 17. The servicer on the loan, which the Court infers to be Owen,

Penney v. Deutsche Bank National Trust Company, Not Reported in Fed. Supp. (2017)

2017 WL 1015002

informed Gerard that he needed to apply for a loan modification under "the settlement relating to the Massachusetts Attorney General and that his loan would be included in the settlement." Id. at ¶ 18. Gerard applied for a loan modification. Id. The Bank commenced foreclosure proceedings on October 16, 2012, and scheduled a foreclosure sale for November 14, 2012. Id. at ¶ 19. It is not clear what happened on that foreclosure sale date, although there is no indication that the Plaintiffs were foreclosed upon or lost their home. On September 3, 2013, Ocwen offered Gerard a loan modification. Id. at ¶ 20. Gerard responded that he could not make the loan payments under the offered modification because the monthly payment amount would equal his entire monthly income. Id. Ocwen agreed to reconsider the loan modification if Gerard submitted an updated income statement. Id. at ¶ 21. Gerard submitted the required paperwork. Id. On August 14, 2014, Ocwen wrote to Gerard that he had been denied a modification of his loan for failing to submit documentation in a timely manner. Id. at ¶ 22. The Plaintiffs allege that Ocwen represented to Gerard that he would be approved for a loan modification. Id. at ¶ 26. On February 12, 2016, the Bank's attorneys wrote to the Plaintiffs informing them that it intended to put the Property up for auction on March 9, 2016 at 2:00 PM. [ECF No. 13 at 20]. It is not clear what happened on that date, although it appears from the most recently amended complaint, filed on June 16, 2016, that the Plaintiffs had not been foreclosed on as of that date.

On March 2, 2016, Gerard and Donna filed suit in the Barnstable County Superior Court in Massachusetts against the Bank. [ECF No. 13 at 18].[3] They simultaneously filed a motion for a temporary restraining order and preliminary injunction to stop the imminent foreclosure of the Property. [ECF Nos. 1-3 at 5, 13 at 15, 20]. The hearing in state court on the motion for a temporary restraining order or preliminary injunction was scheduled for March 8, 2016. [ECF No. 13 at 13–14]. On March 8, 2016, the Bank removed the case from state court to this Court. Id. at 24. Plaintiffs filed an amended complaint on June 16, 2016. [ECF No. 21]. This Complaint includes a request for a temporary restraining order or preliminary injunction. Id. at ¶ 83(i). On July 18, 2016, the Defendants filed a motion to dismiss all counts in the Complaint for failure to state a claim [ECF No. 26], which the Plaintiffs opposed [ECF No. 31]. In support of their opposition to the motion to dismiss, the Plaintiffs also filed an affidavit from Gerard and copies of mortgage-related documents. [ECF Nos. 32, 32-1, 32-2]. On August 10, 2016, the Defendants filed a motion to strike the affidavit and mortgage-related documents [ECF No. 33], which the Plaintiffs opposed [ECF No. 37].

In their Complaint, the Plaintiffs allege the following causes of action: Declaratory Judgment on numerous grounds (Count I); breach of contract (Count II); breach of the implied covenant of good faith and fair dealing (Count III); negligent and intentional infliction of emotional distress (Count IV); violation of federal and state debt collection practice laws (Count V); common law recoupment (Count VI); and recoupment and adjustment of the loan for the Property pursuant to Massachusetts General Laws chapter 140D (Count VII). [ECF No. 21]. The Defendants' motion to dismiss seeks dismissal of all seven counts. [ECF No. 26].

## II. LEGAL STANDARD

To evaluate a complaint in the context of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), the Court first "disregard[s] statements in the complaint that merely offer 'legal conclusion[s] couched as ... fact[ ]' or 'threadbare recitals of the elements of a cause of action.' " Rodriguez-Ramos v. Hernandez-Gregorat, 685 F.3d 34, 40 (1st Cir. 2012) (quoting Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011)). Then, all "remaining, non-conclusory allegations are entitled to a presumption of truth, and we draw all reasonable inferences therefrom in the pleader's favor." Id. The "make-or-break standard" in evaluating the complaint "is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief." Id. (quoting Sepulveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010)).

*3 In deciding a Rule 12(b)(6) motion, a court is ordinarily limited to "the allegations contained within the four corners of the plaintiff's complaint." Young v. Lepone, 305 F.3d 1, 10–11 (1st Cir. 2002). A court may, however, consider documents "outside of the pleadings where they are undisputed, central to plaintiffs' claims, and sufficiently referred to in the complaint or incorporated into the movant's pleadings." Gilmore, 535 F.3d at 52; see also Young, 305 F.3d at 11. "When, as now, a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." Beddall v. State St. Bank and Trust Co., 137 F.3d 12, 17 (1st Cir. 1998); see also Claudio-de León v. Sistema Universitario Ana G. Méndez, 775 F.3d 41, 46 (1st Cir. 2014); Carrero-Ojeda v. Autoridad De Energía Eléctrica, 755 F.3d 711, 716–17 (1st Cir. 2014).

Penney v. Deutsche Bank National Trust Company, Not Reported in Fed. Supp. (2017)

2017 WL 1015002

The Mortgage, Note, and Addendum are central to the Plaintiffs' claims and referred to in the Complaint. There is no dispute as to the authenticity of the copies of the Mortgage, Note, and Addendum attached to the Defendants' motion to dismiss. Therefore, the Court may refer to the Mortgage, Note, and Addendum when ruling on the Defendants' motion to dismiss.

### III. DISCUSSION

#### a. The Defendants' Motion to Strike

The Defendants moved to strike [ECF No. 33] the affidavit written by Gerard and accompanying exhibits pertaining to the mortgage of the Property that were filed with the Plaintiffs' opposition to the motion to dismiss [ECF Nos. 32, 32-1, 32-2]. The Defendants argue that the affidavit amends the Complaint without complying with Federal Rule of Civil Procedure 15(a) ("Rule 15(a)"). In opposition to the motion to strike, the Plaintiffs argue that the motion should be summarily dismissed for failure to comply with the local rules and that the affidavit should not be dismissed because it only clarifies the pleadings.

Although the Court may use certain documents to supplement the factual allegations of the complaint on a motion to dismiss, see Butler v. Balolia, 736 F.3d 609, 611 (1st Cir. 2013), Gerard's affidavit does not fall within this narrow category of documents. See U.S. Bank Nat'l Ass'n v. James, No. 09-89-P-S, 2009 WL 2448578, at *3–4 (D. Me. Aug. 9, 2009) (striking affidavit attached to opposition to motion to dismiss because it was not a document the court could review at that stage of the case). Rather, Gerard's affidavit touches on many of the allegations from the Complaint and effectively functions as an amendment to the Complaint. Rule 15(a) lays out the procedure a party must follow to amend a complaint before trial. It states that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Plaintiffs have obtained neither the opposing party's written consent nor this Court's leave. Accordingly, the Defendants' motion to strike is granted as to the affidavit.[4]

**\*4** The Court will not, however, strike Exhibit B attached to the affidavit. Exhibit B contains documents relating to the Mortgage that were already filed by the Defendants as exhibits to their motion to dismiss. Compare [ECF Nos.

27-1, 27-2] with [ECF Nos. 32-2]. Exhibit A will be struck because it was not referred to in the Complaint and is not susceptible to judicial notice. Accordingly, the Defendants' motion to strike is denied as it pertains to Exhibit B, but granted as to Exhibit A.

#### b. Count II (Breach of Contract)

Plaintiffs argue two theories of breach of contract: first, that the Defendants breached the contract memorialized by the Note and Addendum, and second, that they also breached agreements made during the loan modification negotiations. Complaint at ¶¶ 42–44. Specifically, Plaintiffs allege that "the addendum and the Note taken together did create a right for Gerard Penney to pay the loan in full on the maturity date, or in the alternative for the twelve months preceding the maturity date and the actions of the Bank and its agent's breached this right." Id. at ¶ 43. The Plaintiffs also argue that Ocwen breached agreements it reached with Gerard during the loan modification process. Id. at ¶ 44. The Defendants assert that the Plaintiffs do not properly allege the existence of a contract that allows them to default and remain in default until maturity or one that entitles them to a loan modification. [ECF No. 27 at 7–8].

Plaintiffs do not dispute that Massachusetts law governs the construction of the contracts in this case. See Wilson v. HSBC Mortg. Servs., 744 F.3d 1, 5 (1st Cir. 2014) (applying Massachusetts law when parties did not dispute that "Massachusetts law applies to all substantive issues in th[e] case"); [ECF No. 27-2 at 5]. "In order to state a viable breach of contract claim under Massachusetts law, plaintiffs must prove that [1] a valid, binding contract existed, [2] the defendant breached the terms of the contract, and [3] the plaintiffs sustained damages as a result of the breach." Brooks v. AIG SunAmerica Life Assur. Co., 480 F.3d 579, 586 (1st Cir. 2007); see also Bulwer v. Mount Auburn Hosp., 46 N.E.3d 24, 39 (Mass. 2016).

Courts may examine a contract's terms at the motion to dismiss stage to determine if the plain terms of the contract contradict a plaintiff's allegations. See Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 232 (1st Cir. 2013) (examining contract's plain terms to determine that plaintiff failed to state a breach of contract claim based on the particular theory advanced); see also Clark v. Janssen Pharms., Inc., 606 Fed.Appx. 592, 594 (1st Cir. 2015) (affirming district court's dismissal of a contract suit

Penney v. Deutsche Bank National Trust Company, Not Reported in Fed. Supp. (2017)

2017 WL 1015002

pursuant to Rule 12(b)(6) when the plain terms of the contract undermined the plaintiff's cause of action); Amerifirst Bank v. TJX Cos. Inc. (In re TJX Cos. Retail Sec. Breach Litig.), 564 F.3d 489, 499–500 (1st Cir. 2009) (same); Henning v. Wachovia Mortg., FSB, 969 F. Supp. 2d 135, 147 (D. Mass. 2013) (reasoning that "[w]hen such documents [mortgage and note] contradict allegations in the complaint, the documents trump the allegations," and dismissing breach of contract claim where allegation was "flatly contradicted by the terms of the mortgage and note"); Suthers v. Amgen, Inc., 441 F. Supp. 2d 478, 484 (S.D.N.Y. 2006).

#### i. The breach of contract claim based on the loan documents

Plaintiffs first argue that they had a right to remain in default without the threat of foreclosure until the maturity date, or, alternatively, until twelve months preceding the maturity date. The plain terms of the Note, Addendum, and Mortgage make clear that Plaintiffs did not have a right to fail to make monthly payment on the loan until the maturity date or until twelve months before. The Note requires the Plaintiffs to "pay principal and interest by making payments every month." [ECF No. 27-1 at 2]. The Note also specifies that the borrower "will make these payments every month, in addition to a final Balloon Payment payable at Maturity as referenced in the attached Balloon Note Addendum, until [he] ha[s] paid all of the principal and interest and any other charges described below that [he] may owe under this Note." Id. at ¶ 3. The Note further states that "[i]f [the borrower] do[es] not pay the full amount of each monthly payment on the date it is due, [he] will be in default." Id. at ¶ 7. The Mortgage secures the debt evidenced in the Note, allowing foreclosure if the borrower defaulted. See [ECF No. 27-2 at ¶ 21]. The Mortgage also states that "Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note." [ECF No. 27-2 at ¶ 1]. The Plaintiffs' reference to the portion of the Note that reads that "this loan is payable in full at maturity" does not alter the clear requirements that the borrower make monthly payments on the principal. Thus, the Note and Mortgage plainly require payment *by* the maturity date via *monthly* payments and the final balloon payment, not merely payment *on* the maturity date. Finally, the conditional right to refinance described in the Addendum is determined at the Maturity Date and is explicitly conditional upon, among other things, the borrower being

"current on [his] monthly payments." [ECF No. 27-1 at 5]. The Plaintiffs do not argue that there is some other contract or any implied terms that could plausibly give rise to the alleged right that directly contradicts the plain terms of the Note, Addendum, and Mortgage.

**\*5** Furthermore, on the plain terms of the Note, there is no right to repay the loan within the twelve months preceding August 1, 2035. The only mention of that time period is in the Addendum, which states that one of the conditions for a new loan from the same lender upon maturity is that the Plaintiffs not be thirty days or more late on any monthly payments in the twelve months leading up to August 1, 2035. Id. at 5. Thus, it is one of the prerequisites before the conditional right to refinance is triggered, but does not create a right to not make any payments until the year leading up to the maturity date. Accordingly, because Plaintiffs' breach of contract claim against the Bank is contradicted by the express terms of the Note, Addendum, and Mortgage, Count II fails to state a breach of contract claim based on the theory that the loan documents created a right for the Plaintiffs to remain in default until the Maturity Date. See Amerifirst Bank, 564 F.3d at 499 (affirming dismissal of a breach of contract claim when the contract at issue explicitly undermined the cause of action).

#### ii. The breach of contract claim based on the loan modification negotiations

Plaintiffs next allege that Gerard and Ocwen formed a contract to modify the loan to reflect Gerard's income and preserve his ownership of the Property and that Ocwen then breached the contract, resulting in the Bank initiating foreclosure proceedings. Complaint at ¶ 44. Defendants argue that no such agreement to modify the loan existed and is not sufficiently alleged.

To prevail on a breach of contract claim under Massachusetts law, "a plaintiff must demonstrate that there was an agreement between the parties; the agreement was supported by consideration; the plaintiff was ready, willing, and able to perform his or her part of the contract; the defendant committed a breach of the contract; and the plaintiff suffered harm as a result." Bulwer, 46 N.E.3d at 39. "Contract formation requires a bargain in which there is a manifestation of mutual assent to the exchange." I & R Mech., Inc. v. Hazelton Mfg. Co., 817 N.E.2d 799, 802 (Mass. App. Ct. 2004). During negotiations, "[a] substantial variation in contract terms

Penney v. Deutsche Bank National Trust Company, Not Reported in Fed. Supp. (2017)

2017 WL 1015002

incident to a purported acceptance is not a binding acceptance but a counter offer," Mass. Hous. Fin. Agency v. Whitney House Assocs., 638 N.E. 2d 1378, 1380–81 (Mass. 1994), while a "comment, purported clarification, or expression of dissatisfaction appended to an endorsement of acceptance" is considered a full acceptance. Id. at 1381.

Plaintiffs allege that in 2011, Ocwen informed Gerard that he needed to apply for a loan modification. Although Gerard applied for the loan modification, the Bank nonetheless commenced foreclosure proceedings on October 16, 2012. Complaint at ¶¶ 18–19. On September 3, 2013 Ocwen offered Gerard "a loan modification with a payment amount of $2607.25" per month. Id. at ¶ 20. Plaintiffs further allege that "Gerard contacted Ocwen and informed Ocwen that he accepted the modification but that there must be a mistake as he could not afford the monthly payment which was 100% of his monthly income." Id. Ocwen agreed to reconsider the loan modification and "instructed him to submit an updated income statement that would modify the monthly amount due." Id. at ¶ 21. "Gerard submitted the required paperwork and agreed to this modification of the accepted agreement." Id. On August 14, 2014, Ocwen sent Gerard a letter "stating that he had been denied a modification for failing to submit timely documentation despite the fact that he had submitted the documentation as requested prior by Ocwen." Id. at ¶ 22.

Even construing these facts in the light most favorable to Plaintiffs, they have not sufficiently alleged the existence of a contract between them and Ocwen to modify the loan. Although Ocwen made an offer to modify the loan with a certain monthly payment amount, Gerard rejected the offer when he declined to pay the specified amount. His subsequent request to pay a lower monthly payment constituted a counteroffer. See Mass. Hous. Fin. Agency, 638 N.E. 2d at 1380–81. "A notice of acceptance that is in any respect conditional ... is not an operative notice of acceptance." Christian v. Edelin, 843 N.E.2d 1112, 1115 (Mass. App. Ct. 2006) (quoting 3 Corbin on Contracts § 11.8, at 529–30 (rev. ed. 1996)); see also Moss v. Old Colony Trust Co., 140 N.E. 803, 806 (Mass. 1923) ("[A] conditional acceptance or one that varies from the offer in any substantial respect is in effect a rejection and is the equivalent of a new proposition."). Ocwen did not accept Gerard's counteroffer, and there was therefore no contract between Ocwen and the Plaintiffs. Cf. Eisenberg v. Ocwen Loan Servicing, LLC, 2010 U.S. Dist. Lexis 119553, at *8–9 (D. Md. Nov. 10, 2010) (granting summary judgment to Ocwen on a contract claims based on a loan modification agreement and holding the plaintiff merely made a counteroffer to Ocwen when he signed a copy of the agreement after crossing out sections relating to fees he had to pay). Accordingly, Count II, based on the loan modification negotiations, fails to state a claim for which relief can be granted, and is therefore dismissed.

### c. Count III (Breach of the Implied Covenant of Good Faith and Fair Dealing)

*6 In Count III, the Plaintiffs assert that the Defendants breached the implied covenant of good faith and fair dealing by using their "superior power ... [to] threaten and destroy the plaintiff's rights under the agreements" between the parties. Complaint at ¶ 54. The Plaintiffs do not specify against which defendant Count III is alleged. The Court interprets Count III as against both Defendants.

In Massachusetts, "[e]very contract implies good faith and fair dealing between the parties to it." Anthony's Pier Four, Inc. v. HBC Assocs., 583 N.E.2d 806, 820 (Mass. 1991) (quoting Warner Ins. Co. v. Comm'r of Ins., 548 N.E.2d 188, 192 n.9 (Mass. 1990)). "The covenant of good faith and fair dealing provides that 'neither party shall do anything that will have the effect of destroying or injuring the right of the other party to the fruits of the contract.' " T.W. Nickerson, Inc. v. Fleet Nat'l Bank, 924 N.E.2d 696, 704 (Mass. 2010) (quoting Anthony's Pier Four, Inc., 583 N.E.2d at 806). The "scope of the covenant is only as broad as the contract that governs the particular relationship." Ayash v. Dana-Farber Cancer Inst., 822 N.E.2d 667, 684 (Mass. 2005). Claims of breach of the implied covenant of good faith and fair dealing also require "conduct taken in bad faith either to deprive a party of the fruits of labor already substantially earned or unfair leveraging of the contract terms to secure undue economic advantage." Christensen v. Kingston Sch. Comm., 360 F. Supp. 2d 212, 226 (D. Mass. 2005).

Here, Plaintiffs have failed to sufficiently allege what conduct Defendants engaged in to breach the implied covenant and what contract underlies the claim. To the extent Plaintiffs rely on the same conduct that underlies the breach of contract claim in Count II, Count III fails because, as explained above, Plaintiffs have not adequately alleged a breach of contract. See Ayash, 822 N.E.2d at 684; McCusker v. Ocwen Loan Servs., LLC, No. 14-cv-13663, 2015 WL 4529986, at *6 (D. Mass. July 27, 2015) (holding that Ocwen cannot breach the implied covenant of good faith and fair dealing with regard to a mortgage because it is not a party to the

mortgage). Accordingly, Count III is dismissed.

#### d. Count IV (Negligent and/or Intentional Infliction of Emotional Distress)

The Plaintiffs allege both negligent infliction of emotional distress ("NIED") and intentional infliction of emotional distress ("IIED"). They argue that Defendants had an affirmative duty under state and federal law "to take certain actions" and willfully breached this duty. Complaint at ¶¶ 59–60. Defendants argue that this count should be dismissed because Plaintiffs have failed to plead a plausible claim for either IIED or NIED. Under Massachusetts law, to successfully plead NIED, a plaintiff must allege the following elements: "(1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by objective symptomatology; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case." Payton v. Abbott Labs, 437 N.E.2d 171, 181 (Mass. 1982); see also Gutierrez v. Mass. Bay Transp. Auth., 772 N.E.2d 552, 566 (Mass. 2002). The first element of NIED, negligence, requires that the Defendants owe a duty to the Plaintiffs. See Jupin v. Kask, 849 N.E.2d 829, 834–35 (Mass. 2006).

Here, the Plaintiffs do not plausibly plead that the Defendants owed them a duty of care. They allege that "Defendants were under an affirmative duty pursuant to State and Federal law, rule, and regulation [sic] and by contract to take certain actions." Complaint at ¶ 59. However, "[t]he relationship between a borrower and lender does not give rise to a duty of care under Massachusetts law." MacKenzie v. Flagstar Bank, FSB, 738 F.3d 486, 495 (1st Cir. 2013). Further, "statutory or regulatory violations cannot give rise to a negligence claim when there is no independent duty of care between the parties," although such violations may be evidence of a *breach* of a duty. Id. at 495. Thus, any theory of negligence based solely on a violation of a statute, rule, or regulation—without an independent duty—fails under Massachusetts law.

**\*7** Further, under Massachusetts law, a contract does not create a duty of care for the purposes of tort law. Doe v. Tr. of B.C., No. 15-cv-10790, 2016 WL 5799297, at \*27 (D. Mass. Oct. 4, 2016) ("tort obligations 'are imposed by law, independent of the promises' of contractual duties") (quoting Treadwell v. John Hancock Mut. Life Ins. Co., 666 F. Supp. 278, 289 (D. Mass. 1987)). "[I]f the alleged obligation to do or not to do something that was breached

could not have existed but for a manifested intent, then contract law should be the *only* theory upon which liability would be imposed." Treadwell, 666 F. Supp. at 289 (quoting W. Prosser & W. Keeton, Torts § 92, at 655 (5th ed. 1984)); see also Anthony's Pier Four, Inc. v. Crandall Dry Dock Engineers, Inc., 489 N.E.2d 172, 175 (Mass. 1986). Accordingly, the NIED claim is dismissed.

Plaintiffs also allege that the Defendants intentionally inflicted emotional distress upon them. In order to successfully plead IIED under Massachusetts law, a plaintiff must allege:

> (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was "extreme and outrageous," was "beyond all possible bounds of decency" and was "utterly intolerable in a civilized community," (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was "severe" and of a nature "that no reasonable man [or woman] could be expected to endure it."

Agis v. Howard Johnson Co., 355 N.E.2d 315, 318–19 (Mass. 1976) (internal citations omitted); see also Roman v. Trustees of Tufts College, 964 N.E.2d 331, 341 (Mass. 2012). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement (Second) of Torts, § 46 cmt. d.[5]

The Plaintiffs have not sufficiently pleaded any of the elements of IIED. The Complaint contains no allegations that permit the inference that either the Bank or Ocwen acted with intent to inflict emotional distress, no allegations plausibly establishing "extreme and outrageous" conduct, and no allegations showing a causal link between any intentional actions of the Defendants and the Plaintiffs' emotional distress. Further, being "emotionally devastated" by problems associated with foreclosure of one's home does not sufficiently support a showing of extreme and outrageous conduct. Young, 717 F.3d at 240; see also McCusker, 2015 WL 4529986, at \*7 ("Courts applying Massachusetts law have consistently dismissed IIED claims when defendants communicate with plaintiffs regarding foreclosure and/or loan modification because this behavior does not rise to the level of 'extreme and outrageous.' "). Accordingly, Count IV is dismissed.

Penney v. Deutsche Bank National Trust Company, Not Reported in Fed. Supp. (2017)

2017 WL 1015002

### e. Count V (Violations of State and Federal Debt Collection Practice Laws)

In Count V, the Plaintiffs allege that the Defendants violated state and federal debt collection practice laws, but do not cite to any specific statutes, rules, or regulations regarding debt collection practices. Count V cites to "G.L. 244 and G.L. 183," Complaint at ¶ 66, which the Court interprets to refer to Massachusetts General Laws chapters 244 (entitled "Foreclosure and Redemption of Mortgages") and 183 (entitled "Alienation of Land"). In addressing Count V in their opposition to the motion to dismiss, Plaintiffs cite to Massachusetts General Laws chapter 244, § 35A(h),[6] § 35B, and 15 U.S.C. § 1692k. [ECF No. 31 at 11, 12, 16]. Defendants argue that Count V should be dismissed because Plaintiffs fail to specify what debt collection laws Defendants violated, there are no allegations to support these claims, and the damages alleged are too speculative.

**\*8** Federal Rule of Civil Procedure 8(a)(2) ("Rule 8(a)(2)") requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of a clear and succinct pleading is to give a defendant fair notice of the claim and its basis, and to provide an opportunity for a cogent answer and defense. See Ruiz Rivera v. Pfizer Pharm., LLC, 521 F.3d 76, 84 (1st Cir. 2008); Ocasio-Hernandez, 640 F.3d at 8 (explaining that, following Twombly, "the propriety of dismissal under Rule 12(b)(6) turns on the complaint's compliance with Rule 8(a)(2)"). Courts have dismissed complaints that allege a violation of a statute but that failed to adequately specify what parts of the statute a defendant violated. See, e.g., Bielma v. Bostic, No. 15cv1606-MMA, 2016 U.S. Dist. LEXIS 152, at \*43, 2016 WL 29624 (S.D. Cal. Jan. 4, 2016) (holding that a count in a complaint that cited to an entire chapter of the California Government Code was insufficient under Rule 8); Lopez v. Chase Bank USA, N.A., No. 8:13–CV–1895–T–17MAP, 2014 WL 690282, at \*1 (M.D. Fla. Feb. 20, 2014) (holding that a count in a complaint that cited to an entire chapter of the Florida Statutes was insufficient under Rule 8).

Sections 35A(h) and 35B are lengthy, and the Court "cannot readily discern from the pleadings which violation [the Plaintiffs] intended to allege." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 78–79 (1st Cir. 2014) (addressing a similar pleading problem in a §§ 35A and 35B case). In their opposition, Plaintiffs simply state the conclusion that Defendants disregarded all of §§ 35A(h) and 35B without any supporting factual allegations. Therefore, Plaintiffs fail to allege sufficient facts regarding how Defendants' conduct violated state law.

The Plaintiffs' citation to 15 U.S.C. § 1692k is also unavailing. Section 1692k creates a private cause of action for any violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692k(a), but the violations of the FDCPA that can be sued for are contained in other sections of the FDCPA. Plaintiffs do not identify which provisions of the FDCPA the Defendants failed to comply with. See Tourgeman v. Collins Fin. Servs., 755 F.3d 1109, 1117 (9th Cir. 2014) (illustrating that § 1692(k) creates the private cause of action for violations of substantive provisions of the FDCPA contained in other sections). Accordingly, Count V is dismissed.

### f. Count VI (Common Law Recoupment)

In Count VI, the Plaintiffs claim the right to "common law recoupment" with regard to their mortgage. In Massachusetts, common law recoupment is the right of "a defendant, facing suit for nonpayment on a contract, to assert defensively within the same action a claim for damages due to the plaintiff's own nonperformance of the same contract." May v. SunTrust Mortg., Inc., 7 N.E.3d 1036, 1041–42 (Mass. 2014). A defense of recoupment credits the obligations of a plaintiff against those of the defendant to extinguish the plaintiff's claim. Id.; DiVittorio v. HSBC Bank USA, NA (In re DiVittorio), 670 F.3d 273, 289 (1st Cir. 2012). Recoupment at common law was "a defendant's claim" that could "reduce or extinguish the plaintiff's claim, but it could not result in an affirmative recovery for the defendant." May, 7 N.E.3d at 1041 (quoting Bose Corp. v. Consumers Union of U.S., Inc., 326 N.E.2d 8, 10 (Mass. 1975)). Plaintiffs merely state in conclusory fashion that they assert recoupment as a *defensive cause of action*, but fail to argue that they may properly do so in this proceeding. The First Circuit has indicated that non-judicial foreclosure proceedings, which appear to be at issue here, are likely not actions to which an individual may raise a right in recoupment. See In re DiVittorio, 670 F.3d at 290 n.12 (citing Kelly v. Deutsche Bank Nat'l Trust Co., 789 F.Supp.2d 262, 266–67 & n.6 (D. Mass. 2011) and Ortiz v. Accredited Home Lenders, Inc., 639 F.Supp.2d 1159, 1164–65 (S.D. Cal. 2009)). Therefore, Count VI is dismissed.

Penney v. Deutsche Bank National Trust Company, Not Reported in Fed. Supp. (2017)

2017 WL 1015002

### g. Count VII (Recoupment and Adjustment of the loan pursuant to G.L. 140D)

**\*9** In Count VII, the Plaintiffs request "an adjustment of the loan pursuant to G.L. 140D" based on their "right to rescind" the Mortgage. Complaint at ¶¶ 79–78. A claim for rescission under chapter 140D is governed by the statute of limitations in § 10(f), which states, "an obligor's right of rescission shall expire four years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first." Mass. Gen. Laws ch. 140D, § 10(f). Here, the deadline to a claim for rescission under chapter 140D was July 25, 2009, four years after the execution of the Mortgage and the Note. See Complaint at ¶¶ 8, 12. Since Plaintiffs filed on March 2, 2016, their claim for rescission under chapter 140D is barred by § 10(f). Accordingly, Count VII is dismissed.

### h. Count VIII (Violation of Massachusetts General Laws chapters 244 and 183)

Plaintiffs allege that the "defendants or its [sic] agents have caused to be filed documents which would be in violation of G.L. 244 and 183." Id. at ¶ 82. There are around one hundred and ten sections contained in Massachusetts General Laws chapters 244 and 183. The Plaintiffs do not cite to any specific section in those chapters as the basis for their claim or identify what actions the Defendants undertook that violated those provisions. Neither the Court nor Defendants can be expected to guess what specific provisions Defendants have allegedly violated and by what actions. See Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 78–79 (1st Cir. 2014). Thus, Count VIII is dismissed.

### i. Count I (Multiple Requests for Declaratory Judgment)

In Count I, the Plaintiffs make several requests for declaratory judgment, including that the Mortgage is unenforceable against Donna and thus no foreclosure of the Property can go forward. Although the focus of Count I seems to be Donna's rights, the Plaintiffs also request declaratory judgment on several issues related to Gerard. Defendants argue that the request for declaratory judgment relief should be dismissed because the Complaint does not support a finding that the Mortgage is unenforceable against Donna or that, in the alternative, any alleged defect in the Mortgage has been cured automatically under Massachusetts law because of the passage of time.

Under the Declaratory Judgment Act, 28 U.S.C. § 2201–2202 ("DJA"), the Court has "substantial discretion in deciding whether to declare the rights of litigants." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 136 (2007); see also El Dia, Inc. v. Hernandez Colon, 963 F.2d 488, 493 (1st Cir. 1992). Requests for declaratory judgment are analyzed under the same Rule 12(b)(6) standard as all other counts in a complaint. See Cardigan Mountain Sch. v. N.H. Ins. Co., 787 F.3d 82, 87 (1st Cir. 2015) (applying Twombly and Iqbal to declaratory judgment action); see also Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 34 (1st Cir. 2001) (evaluating requests for declaratory judgment under Rule 12(b)(6)). Requests for declaratory judgment must plead sufficient facts showing the existence of rights to be clarified by declaratory judgment. See, e.g., Wilmot v. Tracey, 938 F. Supp. 2d 116, 150 (D. Mass. 2013) (dismissing a request for declaratory relief in a 1983 suit because the plaintiff failed to allege the unconstitutional policy and constitutional harm needed to support his claim); Tocci Bldg. Corp. of N.J., Inc. v. Va. Sur. Co., 750 F. Supp. 2d 316, 325–27 (D. Mass. 2010) (holding that request for declaratory judgment on insurance indemnification survived a Rule 12(b)(6) motion because the plaintiff had carefully pleaded the particulars of the insurance agreement and the incident that potentially triggered coverage).

Defendants have been unable to show why the declaratory judgment requests regarding whether the Bank can foreclose on the Property even though Donna did not sign the Mortgage and Gerard could not have signed on her behalf must be dismissed at this stage. The core of Defendants' argument is that "Plaintiffs have admitted to Mr. Penney's signature on behalf of Ms. Penney pursuant to the POA—which Mr. Penney himself referenced in the signature according to the notary—is an admission against Plaintiffs that Mr. Penney in fact had the authority to execute the Mortgage on Ms. Penney's behalf." [ECF No. 27 at 6–7]. Defendants do not cite any case law to suggest that a claim involving a facially valid mortgage can be dismissed where the Plaintiffs now dispute the

Penney v. Deutsche Bank National Trust Company, Not Reported in Fed. Supp. (2017)

2017 WL 1015002

validity of that Mortgage. The only case Defendants cite in this section is *Davis v. Meenan*, 169 N.E. 145, 145 (Mass. 1930), which suggests that whether an execution was valid involves questions of fact that cannot be resolved at the motion to dismiss stage. Moreover, it is unclear why Gerard's signature on the Mortgage would be an admission against Donna. The parties have not submitted any durable power of attorney and the Court must view the well-pleaded facts in Plaintiffs' favor at this stage. Furthermore, Defendants have failed to cite authority for the proposition that, under Massachusetts law, if Gerard were not empowered to sign the Mortgage at issue on Donna's behalf, the Mortgage would nonetheless be enforceable against Donna in this case.

**\*10** Citing Mass. Gen. Laws ch. 184, § 24, Defendants also argue in summary fashion that any defect in the Mortgage was automatically cured after ten years. Section 24 provides:

> When any owner of land the title to which is not registered, or of an interest in such land, signs an instrument in writing conveying or purporting to convey his land or interest, or in any manner affecting or purporting to affect his title thereto, and the instrument, whether or not entitled to record, is recorded, and indexed, in the registry of deeds for the district wherein such land is situated, and a period of ten years elapses after the instrument is accepted for record, and the instrument or the record thereof because of defect, irregularity or omission fails to comply in any respect with any requirement of law relating to seals, corporate or individual, to the validity of acknowledgment, to certificate of acknowledgment, witnesses, attestation, proof of execution, or time of execution, to recitals of consideration, residence, address, or date, to the authority of a person signing for a corporation who purports to be the president or treasurer or a principal officer of the corporation, such instrument and the record thereof shall notwithstanding any or all of such defects, irregularities and

omissions, be effective for all purposes to the same extent as though the instrument and the record thereof had originally not been subject to the defect, irregularity or omission, unless within said period of ten years a proceeding is commenced on account of the defect, irregularity or omission, and notice thereof is duly recorded in said registry of deeds and indexed and noted on the margin thereof under the name of the signer of the instrument and, in the event of such proceeding, unless relief is thereby in due course granted.

Section 24 has been described as a "statute of repose" because "[t]he ten-year period stated in § 24 simply allows those individuals whose rights have been affected by the purported conveyance to commence a proceeding to vindicate their rights, but once ten years have elapsed, the rights of those parties to challenge the validity of the conveyance are lost." *Bank of Am., N.A. v. Casey*, 52 N.E.3d 1030, 1038 (Mass. 2016). Plaintiffs are now challenging the Bank's ability to foreclose on the Property because the Mortgage, viewing all well-pleaded facts in Plaintiffs' favor, was not signed by Donna and Gerard did not have the authority to sign on her behalf. Section 24 appears to apply to an owner of property who "signs an instrument in writing conveying or purporting to convey his land or interest." Mass. Gen. Laws ch. 184, § 24. Here, however, Plaintiffs claim that Donna never signed the Mortgage, and thus Defendants' mere citation to Section 24, without more, does not establish that the problem alleged with the Mortgage qualifies as a defect that is automatically cured under chapter 184, § 24. Accordingly, Defendants have failed to show that dismissal of the declaratory judgment requests related to the enforceability of the Mortgage against Donna is appropriate at this stage.

The remaining declaratory judgment requests in Count I, however, must be dismissed because they are insufficiently pleaded.[7] The Plaintiffs make numerous requests for declaratory judgment that duplicate their other causes of action, which the Court has already dismissed under Rule 12(b)(6), and seem distinct from the requests involving Donna. The requests in paragraphs 34 and 40 are duplicative of Count VII, which requests "recoupment and adjustment of the loan Pursuant to G.L. 140D." Complaint at 13. The requests in paragraphs 35

Penney v. Deutsche Bank National Trust Company, Not Reported in Fed. Supp. (2017)

2017 WL 1015002

and 36, involving Gerard's rights under certain agreements, seem to duplicate the breach of contract claims. The request in paragraph 38 vaguely alludes to "all foreclosure laws, rules and regulations," which cannot, as explained above, satisfy Rule 8(a)(2). Similarly, the request in paragraph 39 must be dismissed because it generally states, without more, "that there exist clear violations of the required disclosure laws, rules and regulations," which would affect the mortgage's validity. Accordingly, the declaratory judgment requests regarding the enforceability of the Mortgage against Donna remain, but the remainder are dismissed.

**j. The Plaintiffs' Request for a Preliminary Injunction**

*11 At the end of the Complaint, in the prayer for relief, the Plaintiffs request a preliminary injunction to stop the foreclosure of the Property. Complaint at ¶ 83(i). Courts may consider an application for a preliminary injunction even if it is in the body of the complaint. See, e.g., Cuevas v. DiPaulo, No. 11-cv-10869-WGY, 2011 WL 2118268, at *6 (D. Mass. May 23, 2011) (considering and denying a request for a temporary restraining order in the body of a complaint); Duclerc v. Bender, No. 10-cv-12050-DPW, 2010 WL 5283292, at *2 (D. Mass. Dec. 16, 2010) (same, with a request for either a temporary restraining order or a preliminary injunction); Haverstick v. Gerry, No. 15-cv-94-JD, 2015 WL 1457950, at *2 (D.N.H. Mar. 30, 2015) (granting defendant time to respond to request for preliminary injunction made in the complaint).

In order for a plaintiff to secure a preliminary injunction, he or she must show all of the following: "[1] that he [or

she] is likely to succeed on the merits, [2] that he [or she] is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his [or her] favor, and [4] that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc. 555 U.S. 7, 20 (2008). In this analysis, the most important factor is the likelihood of success on the merits. Corp. Techs., Inc. v. Harnett, 731 F.3d 6, 10 (1st Cir. 2013). The Plaintiffs do not argue that they have met the standard for issuing preliminary injunctions. Further, at this stage, it does not appear likely that Plaintiffs will succeed on the merits. Accordingly, the request for a preliminary injunction is denied.

**IV. CONCLUSION**

For the reasons discussed above, the Defendants' motion to strike [ECF No. 33] is GRANTED in part and DENIED in part. Further, Defendants' motion to dismiss [ECF No. 26] is GRANTED in part and DENIED in part. It is denied with respect to the requests for declaratory judgment regarding Donna in Count I, but granted with respect to the remaining requests in Count I, and Counts II through VIII. Finally, the Plaintiffs' request for a preliminary injunction in the prayer for relief in the Complaint is DENIED.

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2017 WL 1015002

Footnotes

1    The Mortgage itself is attached as an exhibit to the Defendants' motion to dismiss. [ECF No. 27-2]. As is discussed below, the Court may consider this document when evaluating a motion to dismiss under Rule 12(b)(6), even though it is not attached to the Complaint itself, because its authenticity is undisputed, it is central to Plaintiffs' claims, and it is sufficiently referred to in the Complaint. See Gilmore v. Citigroup, Inc. (In re Citigroup, Inc.), 535 F.3d 45, 52 (1st Cir. 2008).

2    Under Massachusetts law, a homeowner may formally declare their home to be a "homestead," which, subject to numerous exceptions, exempts the property "from the laws of conveyance, descent, devise, attachment, seizure, execution on judgment, levy and sale for payment of debts or legacies." Mass. Gen. Laws ch. 188, § 3(b). Two such exceptions are that the homestead declaration cannot impede "a lien on the home recorded prior to the creation of the estate of homestead" or "a mortgage on the home." Id. at §§ 3(b)(2) and 3(b)(3). The Mortgage predates the declaration of homestead. Complaint at ¶¶ 8, 16.

3    The Court may consider the certified copy of the record from Barnstable County Superior Court [ECF No. 13], where this suit began, without converting this motion to dismiss into a motion for summary judgment. See Giragosian v. Ryan, 547 F.3d 59, 66 (1st Cir. 2008) (courts may consider state court records when deciding a motion to dismiss because they are public record); see also Xiao Wei Yang Catering Linkage in Inner Mong. Co., LTD. v. Inner Mong. Xiao Wei Yang USA, Inc., 150 F. Supp. 3d 71, 76 (D.

Penney v. Deutsche Bank National Trust Company, Not Reported in Fed. Supp. (2017)

2017 WL 1015002

Mass. 2015) (same).

4     The Plaintiffs also argue that Defendants' motion to strike and motion to dismiss should be denied because the Defendants did not comply with Local Rule 7.1(a)(2), which requires the lawyers for the parties to confer before either side files an adversary motion. See [ECF Nos. 33, 37]; LR, D. Mass. 7.1(a)(2). While "a litigant's failure to observe the Local Rules invites sanctions, omitting to confer prior to filing a motion certain to be opposed does not warrant so severe a sanction as summary denial." Converse, Inc. v. Reebok Int'l Ltd., 328 F. Supp. 2d 166, 174 n.7 (D. Mass. 2004). "In most cases ... the appropriate remedy for a violation of Rule 7.1 is not to strike the motion; it is the assessment of sanctions under Fed. R. Civ. P. 11." Robinson v. Mass. Dep't of Unemp't Assistance, No. 14-cv-13613-ADB, 2016 U.S. Dist. Lexis 139172, at *6, 2016 WL 5867408 (D. Mass. Oct. 6, 2016). The motion to strike was certain to be opposed, as indeed it was, so summary denial is not the appropriate sanction. Instead, the Court may consider sanctions under Federal Rule of Civil Procedure 11. This analysis applies with equal force to the Defendants' motion to dismiss, which was also filed without the requisite conference with Plaintiffs' counsel. See [ECF Nos. 26, 31 at 3]. The Court warns the Defendants that it must comply with the Local Rules or risk sanctions.

5     When discussing IIED, Massachusetts courts routinely cite the Restatement (Second) of Torts, § 46. See, e.g., Agis, 355 N.E.2d at 318–19; Foley v. Polaroid Corp., 508 N.E.2d 72, 82 (Mass. 1987).

6     Effective January 1, 2016, the Massachusetts General Court amended Massachusetts General Laws chapter 244, § 35A. 2010 Mass. Legis. Serv. Ch. 258 (S.B. 2407) (West). This amendment included removal of § 35A(h). The provisions of the old § 35A(h) were shifted to the current § 35A(c).

7     Plaintiffs have included numerous requests for declaratory judgment within single paragraphs, making it challenging to isolate each request. From the Court's reading of the Complaint, the surviving declaratory judgment requests are contained in paragraphs 32–33, 37, and the last sentence of 40.

---

End of Document                                                                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

14 Mass.L.Rptr. 173
Superior Court of Massachusetts.

Milagros VASQUEZ, Plaintiff,
v.
ELCO ADMINISTRATIVE SERVICES, et al.,
Defendants.

No. CIV. A. 01-3029L.
|
Dec. 17, 2001.

*MEMORANDUM OF DECISION AND ORDER
REGARDING MOTION TO SEVER OR STAY CERTAIN
DISCOVERY*

PETER W. AGNES, JR., Justice.

**\*1** The plaintiff Milagros Vasquez (hereafter,"the plaintiff") has brought a civil action against the driver of a vehicle in which she was a passenger, defendant Keren Castillo (hereafter, "the driver"), the rental company that owned the vehicle (defendant Enterprise Rent-A-Car Company)(hereafter, "Enterprise"), its third party administrator (Defendant ELCO Administrative Services)(hereafter "ELCO"), and the driver's insurance carrier (defendant Arbella Insurance Company). The plaintiff alleges that the driver was negligent and caused her to suffer personal injuries. The plaintiff also seeks a declaratory judgment that either the driver's insurer (defendant Arbella) or the rental company's administrator (defendant ELCO) is obliged to provide coverage. Finally, the plaintiff alleges that the driver's insurer, the rental car company and its insurer have violated G.L. c. 93A and G.L. c. 176D by unreasonably failing to provide the plaintiff with insurance coverage.

An earlier motion by defendants ELCO and Enterprise sought severance and a protective order with reference to the plaintiff's claims under G.L. c. 93A and G.L. c. 176D. The court denied the motion for severance, but ordered a stay of any further discovery with respect to the claims for relief under G.L. c. 93A and G.L. c. 176D pending further order of the court.

The driver's insurer has filed a pretrial motion "to sever claims and stay discovery" by which it seeks an order "that any discovery pertaining to the plaintiff's G.L. c. 93A and G.L. c. 176 claim be stayed, including any discovery from any party to this lawsuit involving a request for Arbella's claim file until judgment is entered on the underlying negligence claim the plaintiff has filed against defendant Keren Castillo as well as the underlying requested declaratory judgment against Arbella." The rationale supplied by defendant Arbella is that until the liability of its insured is determined, "the defense of its insured may be seriously hampered by discovery initiated by the injured claimant against the insurer. *See Bixby v. Allstate Ins. Co.,* 1986 Mass.App. Div. 118, 119, *citing Royal Globe Ins. Co. v. Superior Court of Butt County,* 23 Cal.3d 880, 502 P.2d 329 (1979).* Defendant Arbella points to the potential for the inappropriate disclosure materials in its claims file that it gathered or prepared in anticipation of litigation and as to which there is a basis for the assertion of a work-product privilege, among others. Defendant Arbella relies on two single justice opinions in which the single justice of the Appeals Court suggests that it is appropriate to fashion protective orders in such cases because the G.L. c. 93A and G.L. c. 176D claims against an insurer are premature until its insured has been found liable. *See Belcher v. Pawtucket Mut. Ins. Co.,* Appeals Court No. 89-J-672 (September 27, 1989)(Kass, J.); *Gross v. Liberty Mutual Ins. Co.,* Appeals Court No. 84-0138 (April 24, 1984).

**\*2** Defendant ELCO maintains that the relief sought by defendant Arbella is "far too broad" and that under basic principles of pretrial discovery it is "entitled to any and all materials contained in Arbella's claims file so long as the material is not privileged." Defendant ELCO's Opposition at 3, citing *Cronin v. Strayer,* 392 Mass. 525, 534 (1984) & *Mass. R. Civ. P. 26(b)(1).* The defendant is correct. "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Atlas Tack Corp. v. Donabed,* 47 Mass.App.Ct. 221, 224 (1999) *citing Strom v. American Honda Motor Co.,* 330, 336 (1996). Either party therefore may compel the other to "disgorge whatever facts he has in his possession not otherwise privileged and protected from discovery." *Hickman v. Taylor,* 329 U.S. 495, 501 (1947). *See Mass. R. Civ. P. 26(b)(1).* Not everything that may be contained in an insurance company's claims file is protected from discovery in a negligence action brought against its insured. The extent of a party's discovery obligations does not turn on idiosyncracies such as the categories used in support of its information storage and retrieval system. The impact of these principles is that a party is

14 Mass.L.Rptr. 173, 2001 WL 1631535

entitled to discover from another party all information that is or could be of use with respect to any issue in the case so long as it is not protected from disclosure by a privilege. Ultimately, "the conduct and scope of discovery is within the sound discretion of the judge." *Judge Rotenberg Educ. Ctr., Inc., v. Commissioner of the Dep't of Mental Retardation (No. 1),* 424 Mass. 430, 461 (1997).

Respect for these principles of civil discovery requires a more particularized approach than that sought by defendant Arbella. As this court observed in *Meszar v. Horan,* Worcester Superior Court 99-0788B (November 16, 1999) (Toomey, J.): "An Insurance company resisting discovery, must, therefore, establish a factual basis upon which it can demonstrate that it did not prepare certain documents in the ordinary course of business. Such a demonstration might be accomplished by segregating documents, contained in its claims files, into trial preparation materials and nontrial preparation materials."

ORDER

Based on the above, the motion by defendant Arbella to sever claims and stay discovery is *ALLOWED IN PART* and *DENIED IN PART.* The plaintiff's claims under G.L. c. 93A and G.L. c. 176D having previously been stayed pending further order of the court, any discovery that relates solely to those claims is stayed pending further order of the court. The burden is on the party resisting discovery to establish that the discovery sought by the requesting party relates exclusively to the claims that have been stayed and/or is protected by a privilege. When the privilege asserted is the so-called work product privilege, the burden is on the party resisting discovery to establish that the material sought was prepared or obtained in anticipation of litigation.

**\*3** "The mere possibility that a certain event might lead to future litigation does not render privileged all documents prepared subsequent to that event. The determinative question is whether the prospect of litigation was the primary motivating purpose behind the creation of a particular document." *Meszar v. Horan, supra.* Even when there is a valid basis for the assertion of a privilege, the party resisting discovery may be required to prepare and produce a log containing a descriptive list of the materials that are subject to a privilege. *See, e.g., Decelle, Inc. v. B & M Realty Nominee Trust,* No. CA994075 (Sept. 19, 2000)(Lopez, J.). The motion by defendant Arbella is otherwise *DENIED.*

**All Citations**

Not Reported in N.E.2d, 14 Mass.L.Rptr. 173, 2001 WL 1631535

End of Document

© 2019 Thomson Reuters. No claim to original U.S. Government Works.